## Case No. 16,706.

UNITED STATES v. WILLIAMS.

[4 Biss. 302.] [1]

District Court. D. Indiana.  Feb., 1869.

INDICTMENT—PLEADING—FELONIOUS POSSESSION OF FORGED NATIONAL BANK NOTES.

1. An indictment for the felonious possession of a forged national bank note need not aver that the forged instrument purported to be a note of any designated national bank, if the instrument be copied into the indictment, and if by the terms of such copy it purports to be such a note.

2. In an indictment for the felonious possession of a forged national bank note it is not necessary that the indictment should aver that the bank is a legal corporation. The national courts will judicially take notice of the existence of all national banks.

A. Kilgore, U. S. Dist. Atty.
W. W. Leathers, for defendant.

McDONALD, District Judge. At the present term of the court, the prisoner [Charles Williams] was found guilty on an indictment for the felonious possession of a counterfeit national bank note. And he now moves in arrest of judgment on the ground of certain supposed defects in the indictment.

The indictment charges that, on the 30th of October, 1868, in the district of Indiana, the prisoner "unlawfully, feloniously, and knowingly did then and there have and keep in his possession, and conceal, with intent then and there to pass, utter, and publish as true to some person or persons to the grand jurors aforesaid unknown, one certain false, forged and counterfeit national bank note; which said false, forged, and counterfeit bank note is as follows, to-wit:

0.          National Currency.          A. 20.
            This note                    39,838.
        is secured by bonds of the
            United States,
deposited with the U. S. Treasurer at Washington.
L. E. Chittenden, Register of the Treasury.
    F. E. Spinner, Treasurer of the United States.
            Philadelphia. Pa.. March 7th, 1864.
The National Bank of Philadelphia will pay twenty
        dollars to Bearer on demand.
Samuel S. MacMattox, Cash'r.    Wm. P. Hamm, Presd't.

—With intent then and there thereby to defraud some person or persons to the grand

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

jurors aforesaid unknown, he, the said Charles Williams, then and there well knowing the said national bank note to be false, forged and counterfeit, contrary to the form of the statute," &c.

The indictment contains a second count; but it is in all respects substantially the same as the one above copied.

1. It is objected to this indictment that it does not contain what is called "the purport clause." It is common in charging felonies relating to forged bank notes, to allege that the forged instrument purported to be a note on a designated bank. And in indictments on statutes which employ this language, such an allegation may be necessary. But where no such language is found in the act on which the indictment is framed. it is, to say the least, more doubtful. whether the allegation is necessary. The indictment in question is founded on the tenth and thirteenth sections of the act of congress of June 30, 1864 (13 Stat. 221, 222). The tenth section of this act, so far as it relates to the case at bar, simply provides that every person, who "shall have or keep in possession, or conceal, with intent to utter, publish, or sell. any false, forged, counterfeited, or altered obligation or other security of the United States," shall be punished, &c. And the thirteenth section enacts that "the words 'obligation or other security of the United States,' used in this act, shall be held to include and mean all bonds, coupons, national currency," &c. In these sections there is not a word about forgeries purporting to be national currency or anything else. So far, therefore, as the language of the act on which the indictment is founded is concerned. there is clearly nothing in it requiring the insertion of the "purport clause" in the indictment.

Let us, then, inquire whether any principle in criminal pleading requires the insertion of the clause in question in describing a forged instrument in an indictment. It is a general rule that all the facts necessary to constitute the crime should be plainly stated, and that nothing else is requisite to a good indictment. In all indictments relating to forgery, the general rule is that the pleading must copy the forged instrument. The copy, therefore, being in the indictment and being part and parcel of it, speaks for itself. Of course, it purports to be what its language expresses. Thus in the present case, the copy set out in the indictment plainly purports to be a copy of a bank note executed by the National Bank of Philadelphia. On the face of the indictment, this is unquestionably the purport of the forged instrument. And the copy indicates its purport more certainly and satisfactorily than any mere allegation of its purport could possibly do. Of what use, then, could be an averment in the indictment that the forged instrument purported to be a national bank note? Certainly none at all.

I conclude, therefore, upon principle and reason, that in no case of an indictment describing a forgery and setting out the forged

instrument in hæc verba, is it necessary to superadd the "purport clause." In the forms given by Archbold of indictments for forging and uttering Bank of England notes, the "purport clause" is omitted. Archb. Cr. Pl. & Ev. 534 et seq. And that the clause is unnecessary, seems to be the opinion of a learned American writer on criminal law. 2 Bish. Cr. Proc. § 431. On the whole, I am satisfied that the omission of the "purport clause" in this indictment does not vitiate it.

2. It is contended that the indictment in question is bad, because it does not aver that the National Bank of Philadelphia is a body politic and corporate. It is certain that the act of June, 1864, providing for the incorporation of national banks, is a public act of which all courts must take judicial notice. But it is not so certain that courts must take judicial notice of the organization and incorporation of every national bank existing under that law. If, in fact, there never existed any corporation known as the National Bank of Philadelphia, it is clear that the prisoner ought not to be punished under the indictment. For in that case he could not be guilty of the felonious possession of a forged national bank note, but only of the possession of a spurious note, against which there is no law. It should seem to follow, that unless this court can take judicial notice that what is called the National Bank of Philadelphia is a corporation under the act authorizing the incorporation of national banks, the indictment is bad for not averring that the National Bank of Philadelphia is a corporation under that act.

In the case of a public act incorporating a single designated body politic, there can be no doubt that courts must judicially take notice of the existence of the artificial person thereby created. But the case of the national bank act is somewhat different. It did not of itself create any corporation. It merely provided, under certain conditions, that an indefinite number of voluntary associations might become incorporations under that act. In the case of an act establishing a single corporation, however, its mere passage does not usually ipso facto create the corporation. To effect that there must generally be afterwards an organization under the act; and the thing does not become a body politic till such organization is complete. Now, if the act of congress had only provided for the incorporation of one bank, no one would doubt that when such bank was fully organized, its corporate existence should judicially be noticed by all courts. Can the fact that the act provided for the organization and incorporation of an indefinite number of banks make any difference? I am inclined to think that it cannot. And I am the more strongly impelled to this conclusion by the consideration that the act puts all these national banks under governmental control and supervision; that their articles of association must be deposited among the national archives; that their capital consisting of registered bonds must be deposited with the

treasurer of the United States; that before the bank enters upon the transaction of business, a certificate of the comptroller of the currency, to the effect that the bank has fully complied with the provisions of the act so as to become a corporation, shall be published in the newspapers; that every such bank shall make quarterly reports to the government; and that these banks may be made fiscal agents of the United States. In fine, the various and numerous provisions of the act providing for the incorporation of national banks indicate that they are to be regarded as public institutions of the existence of which all the departments of government must officially take notice.

Therefore, as it is a rule that neither in civil nor criminal pleading is it necessary to allege any fact of which the court will judicially take notice, I conclude that no averment in this indictment of the existence of the National Bank of Philadelphia as a corporation was necessary. The motion in arrest is overruled.