FEDERAL SAVINGS & LOAN INS. COR-
PORATION v. THIRD NAT. BANK
IN NASHVILLE.

Civil Action No. 337.

District Court, M. D. Tennessee,
Nashville Division.

April 5, 1945.

Farmer, Denney & Leftwich, of Nashville, Tenn., for plaintiff.

E. J. Walsh and Walker & Hooker, all of Nashville, Tenn., for defendant.

DAVIES, District Judge.

This cause is before the Court on motion of defendant to dismiss for lack of jurisdiction over the subject matter.

The grounds of the court's jurisdiction of the above cause is stated in the original complaint, as follows:

"1. The plaintiff is a governmental corporation, created by an Act of Congress. Its capital stock is entirely owned by the United States through the Home Owners' Loan Corporation. The status of the plaintiff corporation is the ground upon which this Court's jurisdiction depends. * * *"

Defendant, in its answer, insists that this court is without jurisdiction for the reason that while plaintiff is a corporation created by an Act of Congress, its capital stock is not owned by the government of the United States, but is, in fact, owned by the Home Owners' Loan Corporation, a separate corporation, the stock of which is in turn owned by the government of the United States; and that by reason of the provisions of Title 28 U.S.C.A. § 42, this court is without jurisdiction, the government of the United States not in fact being the owner of more than one-half of the capital stock of plaintiff.

Plaintiff was created under an Act of Congress of June 27, 1934, being Chapter 847, Section 402, 48 Stat. 1256, and appearing as Title 12 U.S.C.A. § 1725, providing, in part, as follows:

"(b) The Corporation shall have a capital stock of $100,000,000, which shall be divided into shares of $100 each. The total amount of such capital stock shall be subscribed for by the Home Owners' Loan Corporation which is hereby authorized and directed to subscribe for such stock and make payment therefor in bonds of the Home Owners' Loan Corporation. The Corporation shall issue to the Home Owners' Loan Corporation receipts for payment for or on account of such stock, which shall serve as evidence of the ownership thereof, and the Home Owners' Loan Corporation shall be entitled to the payment of dividends on such stock out of net earnings at a rate equal to the interest rate on such bonds, which dividends shall be cumulative.

"(c) On June 27, 1934, the Corporation shall become a body corporate, and shall be an instrumentality of the United States, and as such shall have power—

"(1) To adopt and use a corporate seal.

"(2) To have succession until dissolved by Act of Congress.

"(3) To make contracts.

"(4) To sue and be sued, complain and defend, in any court of law or equity, State or Federal."

In support of its motion, defendant relies on the terms and provisions of the Act of February 13, 1925, Title 28 U.S.C.A. § 42, providing as follows:

"No district court shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an Act of Congress. This section shall not apply to any suit, action, or proceeding brought by or against a corporation incorporated by or under an Act of Congress wherein the Government of the United States is the owner of more than one-half of its capital stock."

Defendant insists that ownership of the capital stock of plaintiff by the Home Owners' Loan Corporation is not ownership thereof by the Government of the United States as contemplated by the terms and provisions of the statute above quoted, and therefore, plaintiff is not entitled to maintain its suit in this court.

Plaintiff insists that it is an instrumentality of the Government of the United States, was created by an Act of Congress and empowered to sue and be sued, complain and defend, in any court of law or equity, State or Federal, and that, by reason of the fact that the Government of the United States is the owner of the entire capital stock of the Home Owners' Loan Corporation, that both the Home Owners' Loan Corporation and plaintiff are parts of the Government of the United States, and this suit is therefore a suit arising under the laws of the United States.

Until February 13, 1925, it was a well settled rule of law that a suit, for whatever reason, by or against a corporation created under an Act of Congress with power to sue or be sued in any court, State or Federal, was a suit arising under the laws of the United States. Under the decisions of the Supreme Court, the essence of those decisions is that such a suit arises under the laws of the United States, not because of the character of the suit, nor the relief demanded, but merely because the plaintiff suing or the defendant sued is a Federal Corporation with power to sue or be sued in any court, State or Federal. Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204; Union Pacific R. Co. v. Myers, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319.

On February 13, 1925, the statute above quoted, Title 28 U.S.C.A. § 42, was en-

acted, distinctly changing the rule of law in effect up to that date.

The question now before the Court is whether or not the ownership of plaintiff's stock by the Home Owners' Loan Corporation amounts to ownership by the Government of the United States. If so, the rule remains unchanged.

The Home Owners' Loan Corporation was created by the Act of June 13, 1933, Title 12 U.S.C.A. § 1463, which provides that the stock of the Home Owners' Loan Corporation "shall be subscribed for by the Secretary of the Treasury on behalf of the United States, * * *. The Corporation shall issue to the Secretary of the Treasury receipts for payments by him for or on account of such stock, and such receipts shall be evidence of the stock ownership of the United States. * * * "

█ The creation and legal existence of the Home Owners' Loan Corporation has been referred to and noticed by the courts on a number of occasions, and it is well settled that while said corporation is an instrumentality of the Government of the United States, it is, at the same time, a properly organized corporation having complete corporate existence. Fletcher v. Jones, 70 App.D.C. 179, 105 F.2d 58; United States, ex rel. Fletcher v. Fahey, 73 App.D.C. 257, 121 F.2d 28. Congress, in creating instrumentalities of the Government for particular purposes, has resorted to the plan of creating separate corporations for these purposes. In the creation of some of these corporations, such as the Reconstruction Finance Corporation, Federal Deposit Insurance Corporation, Home Owners' Loan Corporation, and Federal Intermediate Credit Banks, the Congress has provided that the stock in said corporations shall be subscribed for by the Secretary of the Treasury on behalf of the United States and payments made therefor paid from the Treasury, and receipts evidencing payments to be evidence of stock ownership of the United States.

Congress has created other instrumentalities of the Government without such direct ownership of stock by providing that corporations theretofore created by Congress should subscribe for such capital stock. While it is true that the Government of the United States may be deemed to be the ultimate beneficial owner of plaintiff's stock by reason of the Government's ownership of the stock of the Home Owners' Loan Corporation, and while the Government of

the United States might be said to be the owner once removed of plaintiff's stock, the question is: Does the situation comply with the terms and provisions of the Act of 1925 relating to the jurisdiction of the district courts of the United States so as to give this court jurisdiction?

█ It is well settled that the district courts of the United States are courts of limited jurisdiction, and it is apparent that it was the intention of Congress, by the passage of the Act of February 13, 1925, to further limit this jurisdiction. Up until that time, the district courts had jurisdiction of all suits by or against any corporation organized or created under an Act of Congress on the theory that all such suits arose under the laws of the United States, regardless of the character of the suit, merely because the corporation was a Federal corporation.

█ The effect of the Act of February 13, 1925, was to remove from the jurisdiction of the Federal courts such cases arising under the laws of the United States as suits by or against Federal corporations in which the Government was not the owner of more than one-half of the capital stock, thereby further limiting the jurisdiction of the courts of the United States. It is also well settled that statutes relating to the jurisdiction of United States Courts are to be strictly construed. Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249; Grace v. American Central Ins. Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L. Ed. 1248.

Should, therefore, the courts, by judicial interpretation, attempt to broaden an Act which apparently was passed for the purpose of limitation of jurisdiction? The Act does not say that it shall not apply to all corporations wherein the Government of the United States is the beneficial owner of more than one-half of its capital stock, or in which it is indirectly the owner of more than one-half of its capital stock. The Home Owners' Loan Corporation, being a distinct, separate legal entity, is the owner of the capital stock of plaintiff. This stock constitutes a part of the assets of the Home Owners' Loan Corporation, and is liable for any debts of the Home Owners' Loan Corporation. It is subject to attachment and execution on the part of creditors; while if the stock were owned by the Government of the United States, it would not be subject to attach-

114

ment and execution on the part of a general creditor. It has been held that the Reconstruction Finance Corporation, a similar Governmental corporation in which the entire capital stock is owned by the Government of the United States, is such an entirely separate and distinct legal corporate entity that it is liable for the payment of court costs, just as any other litigant would be. Reconstruction Finance Corporation v. J. G. Menihan Corporation, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed 595. It is not at all unusual in the business world for corporations to own stock in other corporations, but it has never yet been determined that a stockholder of a parent corporation, by reason of his ownership of said stock, thereby becomes a stockholder in the subsidiary corporation. The Act itself, under which plaintiff was created, provides that all dividends declared on its capital stock should be paid to the Home Owners' Loan Corporation.

■■ To accept the theory advanced by counsel for plaintiff would, in the opinion of the Court, serve to defeat the purpose of the statute in more cases than this particular one, as it would necessarily increase instead of limit the jurisdiction of the district courts of the United States. The Court will take judicial knowledge of the fact that there are a considerable number of national banks created under an Act of Congress wherein the Reconstruction Finance Corporation, a Governmental agency, through its ownership of preferred stock, is the owner of more than one-half of the capital stock of said national banking associations, and to construe the statute according to plaintiff's theory would result in the district courts of the United States having jurisdiction of all suits wherein the required amount was involved brought by or against such bank, even though it is specifically provided in the Act creating said banks that for the purpose of jurisdiction, the bank should be deemed a citizen of the state where it is located. Federal Intermediate Credit Bank v. Mitchell, 277 U.S. 213, 48 S.Ct. 449, 72 L.Ed. 854, which held that by reason of the Government of the United States owning all the capital stock of the Federal Intermediate Credit Bank, which was a corporation created by an Act of Congress, the district courts had jurisdiction of any suits by or against said corporation, even though the Act creating said corporation provided that each such bank "for purposes of jurisdiction shall be deemed a citizen of the State where it is located." 12 U.S.C.A. § 1023.

■■ Counsel for plaintiff earnestly insist that plaintiff, being a Governmental agency, is an arm of the Government of the United States, exercising Governmental functions, and carrying on the business of the Government of the United States, and for these reasons should be entitled to prosecute its suits concerning Government business in the courts of the United States; and that for the Court to hold that Title 28 U.S.C.A. § 42 excludes jurisdiction on the part of this court of trying suits concerning plaintiff's business is, in effect, the same as holding that the plaintiff and the Home Owners' Loan Corporation, the owner of plaintiff's capital stock, is not a part of the Government of the United States. It is apparent from the reading of the opinions of the Supreme Court on this question that these considerations were in a large part responsible for the adoption of the rule that any suit brought by or against a corporation chartered under the Acts of Congress was deemed to be a suit arising under the Constitution or laws of the United States, and, as pointed out, such has been the law until the passage of the statute in question. The matter of jurisdiction of the district courts of the United States is not to be considered a special privilege conferred upon Governmental agencies or others, and jurisdictional statutes are not to be considered in any protective sense. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 703, 78 L.Ed. 1248.

It is well recognized that the district courts of the United States are courts of limited jurisdiction, and, however much the Court might desire to entertain suits relative to the business of the Government brought by Governmental agencies, Congress, in its wisdom, has seen fit to limit the jurisdiction of the district courts, and it is clearly apparent that the limitation imposed by Section 42 of Title 28 U.S.C.A. was a distinct departure from, and limitation of, the rule which had been declared by judicial interpretation of the courts. If Congress sees fit, for reasons best known to it, to limit, alter or modify this rule, it is not the province of the courts to question such action.

The Court, for these reasons, is constrained to hold that the ownership of the capital stock of plaintiff by the Home Owners' Loan Corporation does not come within the exception in the statute exempting from its terms any corporation incorporated by or under an Act of Congress wherein the Government of the United States is the owner of more than one-half of its capital stock, and, therefore, plaintiff is within the statutory prohibition that no district court shall have jurisdiction of any suit brought by a corporation upon the sole ground that it was incorporated by or under an Act of Congress.

Plaintiff now seeks to amend its original and amended complaint on the question of jurisdiction by adding, at the end of the first paragraph thereof, the following:

"1. Plaintiff corporation is an instrumentality of the United States and is empowered 'to sue and be sued, complain and defend, in any court of law or equity, State or Federal' (Title 12, Section 1724 [1725] U.S.C.A.). The matter in controversy exceeds, exclusive of interest and cost, the sum of $3,000.00 and as the plaintiff is a corporation created by an Act of Congress, this suit and the questions involved arise under the 'laws of the United States' (Title 28, Section 41[1] (a) USCA). The Government of the United States is the owner of more than one-half of the capital stock of plaintiff corporation, in that its entire capital stock is owned and held by the Home Owners' Loan Corporation (Title 12, Section 1725 b), which is a corporation created by an Act of Congress (Title 12, Section 1461–1468, USCA), and is an instrumentality of the United States, the funds therefor being provided by the United States, and the stock thereof being held by the Treasury on behalf of the United States, from funds made available to the Secretary of the Treasury by the Reconstruction Finance Corporation, both this plaintiff and the Home Owners' Loan Corporation being a part of the 'Government of the United States' (Title 28, Section 42, USCA).

"2. That as one of the basis of its claim, plaintiff shows a violation by the defendant of Title 12, U.S.C.A. Section 1731(e) in that the defendant for the purpose of influencing the action of the said plaintiff corporation made, or caused to be made, a statement, knowing the same to be false, Title 12 USCA, Section 1731(e).·

"3. That as one of the basis for its claim plaintiff corporation made a "contribution" under the provisions of Section 1729(f) as hereinafter more fully alleged. That the right to make such contribution under Section 1729(f) is an essential element of plaintiff's cause of action, and that if the law is given one construction, plaintiff's cause of action will fail, and if given another construction, it will succeed."

■ Inasmuch as the proposed amendment relates solely to the question of jurisdiction, the Court will consider the question as if the amendment had been allowed; and if, after such consideration, it appears that there is no jurisdiction irrespective of the proposed amendment, it would be needless to allow same. Paragraph numbered "1" of the amendment is merely a more detailed statement of the proposition which has already been decided in the first part of this opinion.

Paragraph numbered "2" of the amendment states that as one of the basis of its claim, plaintiff shows a violation by the defendant of Title 12 U.S.C.A. § 1731(e). in that defendant, for the purpose of influencing the action of _plaintiff, made, or caused to be made, a statement, knowing the same to be false.

Section 1731(e) of Title 12 U.S.C.A., above referred to, provides as follows:

"Whoever, for the purpose of inducing the insurance of the accounts of any institution by the Federal Savings and Loan Insurance Corporation or for the purpose of obtaining any extension or renewal of such insurance by said Corporation or for the purpose of influencing in any way the action of the said Corporation under this chapter, makes, passes, utters, or publishes, or causes to be made, passed, uttered, or published, any statement, knowing the same to be false, or utters, forges, or counterfeits, or causes or procures to be uttered, forged, or counterfeited, any instrument, paper, or document, or utters, publishes, or passes as true, or causes to be uttered, published, or passed as true, any instrument, paper, or document, knowing it to have been uttered, forged, or counterfeited, or willfully overvalues any security, asset, or income, of any institution insured or applying for insurance by said Corporation, shall be punished by a fine of not more than $5,000, or by imprisonment for not more than two years, or both."

116

It will be noted in the first place that the statute above referred to applies to Savings and Loan Associations, their agents and employees, insured or applying for insurance or renewals thereof with the Federal Savings and Loan Insurance Corporation. Furthermore, it is well recognized that the violation of a Federal statute does not create a civil right of action cognizable in the Federal courts, unless so provided by the statute. The mere fact that a person might violate a Federal criminal statute does not, of itself, give the United States district courts jurisdiction of a civil suit resulting therefrom. A person who steals an automobile and transports it in interstate commerce has violated a Federal statute, but it does not necessarily follow that the owner of the car may prosecute a civil suit for the value of the car in a district court of the United States for the sole reason that a Federal statute was violated in the theft of the automobile, thereby causing the case to become one arising under the laws of the United States. The purpose of the statute in question is to place a criminal penalty upon the commission of certain acts, and does not purport to confer jurisdiction upon the United States court to try any civil action arising out of the violation of the statute.

Paragraph numbered "3" states that as one of the basis for its claim, plaintiff made a "contribution" under the provisions of Title 12 U.S.C.A. § 1729(f), as hereinafter more fully alleged; that the right to make such "contribution" under said Section is an essential element of plaintiff's cause of action, and that if the law is given one construction, plaintiff's cause of action will fail, and if given another construction, it will succeed.

It is apparent that this paragraph is nothing more or less than a conclusion of the pleader. To fully discuss the question raised by this paragraph, it is necessary to examine the basis of plaintiff's suit. Whether a suit arising under a law of the United States is within the district court's jurisdiction must appear from plaintiff's pleading, not the defenses which may be interposed to, or anticipated by it. Peyton v. Railway Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525; Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & N. R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70.

The original complaint, in substance, alleges that, as authorized and directed by law, plaintiff insured the accounts of the Fidelity Federal Savings and Loan Association of Nashville, Tennessee; that one Virgil Hall was secretary and treasurer of Fidelity Federal Savings and Loan Association from its organization until about February 1, 1941; that said Hall wrongfully and without authority abstracted funds of the Association for his own use in the sum of $34,137.03, and as a result of such abstraction of funds, the capital of the Association was impaired, and plaintiff, in order to protect itself, made a contribution in the manner provided by law in the sum of $32,361.47 to said Association, with the provision that $29,708.50 would be used in restoring the shortage occasioned by the acts of Hall, the balance to be used for the restoration of other losses; and that the Association has assigned all of its right, title and interest, and choses in action and rights of action against defendant to the plaintiff.

That the Fidelity Federal Savings and Loan Association had its chief bank account with the defendant, Third National Bank, and because of an arrangement between Hall and defendant Bank to mislead and give untrue information to the examiners of plaintiff, said Bank unlawfully and without authority made charges against the account of the Association, applying the proceeds thereof to the payment of personal loans made by defendant Bank to Hall; that at the time of said transactions, Hall was indebted to the Bank in large sums, and plaintiff divides its suit into five claims of relief, alleging five separate transactions which entitle it to recover:

1. An item of $10,000 unlawfully charged against the account of the Association by defendant as of September 20, 1940.

2. An item of $15,945.66 unlawfully charged against the account of the Association by defendant as of September 13, 1940.

3. An item of $10,000 unlawfully charged against the account of the Association by defendant as of October 9, 1940.

4. An item of $11,456.83 lost by plaintiff by reason of fraud and deceit of defendant in making false and untrue statements to plaintiff's examiners.

5. An item of $3,000 representing the proceeds of a mortgage belonging to the Association unlawfully held by defendant Bank as collateral to a personal indebtedness of Hall.

In short, the first, second and third claims of relief charge the unlawful conversion of funds by the defendant from the account of the Association, which said items were unlawfully converted by defendant from the account of the Association and credited to the personal indebtedness of Hall. The fourth claim of relief seeks to recover an item of loss occasioned by fraud and deceit on the part of defendant. The fifth claim of relief seeks to recover the value of a mortgage note unlawfully transferred to defendant by reason of an invalid endorsement.

Plaintiff, by amendment to its original complaint, has stated a sixth claim of relief, which apparently consists of a number of different items, all, however, relating to alleged fraudulent and illegal dealings between the Bank and Hall, wherein the Bank is charged with having advanced Hall funds with which to cover shortages in his account with the Association, and thereafter illegally making itself whole by various methods, such as accepting the proceeds of checks drawn against funds of the Association on which checks the endorsement of payees were forged; by charging against the account of the Association checks not properly countersigned; by crediting to the account of the Association for the purpose of deceiving the examiners of plaintiff checks drawn against the accounts of other depositors of said Bank who had insufficient funds with which to pay said checks, which fact was well known to the Bank, then later charging the checks against the account of the Association; by permitting Hall to deposit to his own account checks illegally drawn on the account of the Association; by pre-dating deposits in the account of the Association to deceive plaintiff's examiners; by holding as security and collateral to the personal indebtedness of Hall, checks of the Association illegally drawn by Hall; by holding as collateral security to the personal indebtedness of Hall, notes and mortgages of the Association illegally assigned to the Bank; by giving false statements to the examiners of plaintiff as to the state of the Association's account, for the purpose of deceiving plaintiff and the Association and to protect Hall; and by accepting checks of the Association payable to third parties bearing forged and restrictive endorsements, all amounting to conversion and fraud and deceit on the part of the defendant Bank.

 It is apparent that the alleged acts complained of are purely of a local nature and plaintiff's rights, if any, are fully governed by the common law and the laws of the State of Tennessee relating to conversion and fraud and deceit. Plaintiff has not pointed out any Federal statute vesting this court with jurisdiction of suits of this nature, except in cases where jurisdiction would be entertained on the grounds of diversity of citizenship; neither has it been shown that plaintiff's basic rights depend upon the construction of any Federal statute. The gist of the entire action is the alleged fraudulent and deceitful conduct of the defendant and the alleged wrongful conversion of funds belonging to the Association. How plaintiff's recovery for these matters could involve the interpretation of the Constitution or laws of the United States which, if given one construction, plaintiff's rights would be supported, and if given another construction, would be defeated, is not apparent. The rights of plaintiff to recover in this case depend entirely upon the facts, the common law, and the laws of the State of Tennessee relative to conversion and fraud and deceit. These rights, if any, are enforceable without reference to any Federal statutes. There is no necessary connection between the enforcement of such rights and the existence of a controversy arising under Federal law.

 Counsel for plaintiff, apparently realizing their dilemma, have attempted to bolster the allegations of jurisdiction, first, by paragraph numbered "3" of the amendment stating: "That as one of the basis for its claim plaintiff corporation made a 'contribution' under the provisions of Section 1729(f) as hereinafter more fully alleged. That the right to make such contribution under Section 1729(f) is an essential element of plaintiff's cause of action, and that if the law is given one construction, plaintiff's cause of action will fail, and if given another construction, it will succeed." As hereinabove mentioned, it is apparent that this statement on its face is a conclusion of the pleader. "The office of pleading is to state the facts, not conclusions of law. It is the duty of the court to declare the conclusions, and of the parties to state the premises." Gold-Washing

& Water Co. v. Keyes, 96 U.S. 199, 202, 24 L.Ed. 656. An examination of the complaint shows that the only mention of the matter embodied in paragraph numbered "3" of the amendment is contained in paragraph "2" of the complaint, which states:

"As a result of such abstraction of funds, the capital of the Fidelity Federal Savings & Loan Association was impaired and plaintiff in order to protect itself made a contribution in the manner provided by law in the sum of $32,361.47 to the Fidelity Federal Savings & Loan Association, with the provision that $29,708.50 of said amount would be used in restoring the shortage occasioned by the acts of the said Virgil Hall and that the balance would be used for the restoration of other losses."

It is not alleged that the defendant is denying the right of plaintiff to make said contribution, and it is difficult to see how the act of plaintiff in making the contribution could in any way affect the basic right to recover of the defendant by reason of wrongful acts of conversion and fraud and deceit out of which this suit arises. It may be said as a matter of conjecture that somewhere or some time during the course of the proceeding, plaintiff's right to make the contribution may be brought into question, but it is well settled that a genuine and present controversy, not merely a possible or conjectural one, must exist with reference to the question of jurisdiction. New Orleans v. Benjamin, 153 U.S. 411, 14 S.Ct. 905, 38 L.Ed. 764; Defiance Water Co. v. Defiance, 191 U.S. 184, 24 S.Ct. 63, 48 L.Ed. 140; Gully v. First National Bank, 299 U.S. 109, 57 S. Ct. 96, 98, 81 L.Ed. 70. "Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." Gully v. First National Bank, supra. It is not alleged in the complaint or the amendment as to how any construction which might possibly be placed upon plaintiff's right of a contribution could in any way affect plaintiff's basic right of recovery. "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends." Shul-

this v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 706, 56 L.Ed. 1205. Not every question of Federal law emerging in a suit is proof that a Federal law is the basis of the suit. Gully v. First National Bank, supra. In the above case, Mr. Justice Cardozo, in delivering the opinion of the Court, has so aptly said:

"This Court has had occasion to point out how futile is the attempt to define a 'cause of action' without reference to the context. * * * To define broadly and in the abstract 'a case arising under the Constitution or laws of the United States' has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. * * *

"Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a Federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by." (299 U.S. 117, 118, 57 S.Ct. 100, 81 L.Ed. 70.)

As to the basic nature of plaintiff's claim, let us assume that plaintiff had not made a contribution and had not taken an assignment of the claim of Fidelity Federal Savings & Loan Association against the defendant. Would, under the statement of the claims of relief made in the complaint, this court have had jurisdiction of a suit by the Fidelity Federal Savings & Loan Association, a Tennessee corporation, against the defendant Bank to recover on said claims? It appears that this question would certainly have to be answered in the negative. It is apparent, therefore, that in so far as the construction of any Federal statute is concerned, the plaintiff herein, standing in the shoes of the Fidelity Federal Savings & Loan Association, would not be-

in any better position as far as the question of jurisdiction is concerned, except for the fact that plaintiff is a corporation organized and chartered under an Act of Congress, which question has already been disposed of.

For all of these reasons, it appears that to allow the amendment would avail nothing. The application to amend is therefore denied. And it appearing that the court is without jurisdiction of the subject matter of this cause, the motion to dismiss is accordingly granted.